**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **TRICIA FITCHETT**, individually, and on behalf of others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>**WIELAND ROLLED PRODUCTS NORTH AMERICA, LLC**, a limited liability company,<br><br>       Defendant. | Case No.:   3:25-cv-766-RGJ<br><br>Hon.: |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Tricia Fitchett ("Plaintiff"), individually and on behalf of all others similarly situated, hereby brings this Collective and Class Action Complaint against Defendant, Wieland Rolled Products North America, LLC ("Wieland" or "Defendant"), and states as follows:

### INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Wieland, arising from Wieland's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. Wieland was founded in 1916 and operates 84 locations internationally, with 42 locations in the United States of America including a location in Louisville, Kentucky.

3. In order to produce its products, Wieland employed Plaintiff and similarly situated hourly non-exempt employees, with job titles including, but not limited to, operators, utility workers, forklift driver, inspectors, inspector packers, shipping laborers, metal allergic lab

1

department, furnace builders, maintenance laborers (the "Processing and Packaging Employees"). These employees were responsible for, *inter alia*, processing, packaging and shipping product and maintaining the equipment necessary to do so.

4.     Wieland employed Plaintiff as an hourly Processing and Packaging Employee within the last three (3) years.

5.     Due to the nature of its operations, Wieland required its Processing and Packaging Employees to wear company-issued protective clothing and safety equipment during their work shifts in order to protect themselves in the warehouse, to prevent contamination of the metal, and to comply with federal and state governmental safety regulations and mandates. The company-issued protective clothing and safety equipment included coveralls, steel toed boots, gloves, safety glasses, side heels, hard hats, and ear plugs ("the PPE").

6.     Wieland required its Processing and Packaging Employees to change into ("don") the PPE at the worksite and *before* clocking in for their scheduled work shifts.

7.     Similarly, Wieland required its Processing and Packaging Employees to change out of ("doff") the PPE at the worksite and *after* clocking out for their scheduled work shifts.

8.     The reason Wieland required its Processing and Packaging Employees to don and doff the PPE at the worksite was to promote a safer and more efficient manufacturing and processing process and to ensure compliance with federal and state governmental safety regulations and mandates.

9.     The mandatory pre- and post-shift donning and doffing process was compensable because it was an integral and indispensable part of the Processing and Packaging Employees' principal work activities and because Wieland required it to be done at the worksite. The Processing and Packaging Employees could not have completed their assigned work tasks without

wearing the PPE.

10.    Before donning the PPE, Processing and Packaging Employees had to walk to from the parking lot through the warehouse about 100 yards, through multiple different doors, to get to the storage area where the PPE gear was stored. Processing and Packaging Employees would collect their PPE gear and go to the changing area of the locker room.

11.    Processing and Packaging Employees collected and donned the PPE *before* clocking in for their scheduled shift via a punch clock.

12.    At the end of each shift and *after* clocking out, Processing and Packaging Employees were required to doff the PPE they wore during their shift and return it to the storage area before they could retrieve their personal belongings and leave Wieland's facility.

13.    Defendants violated the FLSA by knowingly suffering or permitting Processing and Packaging Employees to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of 1.5 times the regular rate.

14.    Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members (i.e., Processing and Packaging Employees), were violated, and a judgment awarding them unpaid back wages, liquidated damages, and attorneys' fees and costs to make them whole for damages they suffered, and to help ensure Wieland will not subject future workers to the same illegal conduct in the future.

15.    At the earliest time possible, Plaintiff will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Wieland at any time in the past three years.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

16.    This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 28

U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

17.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction…."

18.     Moreover, this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 class members, and at least some class members have a different citizenship than Wieland.

19.     Wieland's annual sales exceed $500,000.00, and Wieland employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Wieland's employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

20.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

21.     This Court has general personal jurisdiction over Wieland because Wieland maintains its headquarters in Jefferson County, Kentucky.

22.     Venue is proper in the Western District of Kentucky under 28 U.S.C. § 1391(b)(1) because Wieland resides in Jefferson County, Kentucky.

## **PARTIES**

23.     Plaintiff, Tricia Fitchett, is an Illinois resident and worked for Wieland as a non-exempt hourly Machine Operator at Wieland's processing facility in Granite City, Illinois from

4

approximately July 7, 2000 through October 15, 2024. Plaintiff regularly worked 40 or more hours per week and was paid an hourly wage, most recently at the rate of $35.89. Plaintiff signed a consent to join this collective action lawsuit, which is attached as **Exhibit A**.

24.    During the past three years, additional putative Opt-in Plaintiffs were or are employed by Wieland as Processing and Packaging Employees and their consent forms will also be filed in this case.

25.    Defendant Wieland Products North America, LLC is a Delaware limited liability company with its principal place of business located at 4803 Olympia Park Plaza, Suite 3000 Louisville, Kentucky 40241.

26.    Wieland's registered agent is listed as Corporation Service Company, 421 West Main Street Frankfort, Kentucky 40601.

## GENERAL ALLEGATIONS

27.    Wieland typically paid its Processing and Packaging Employees at a base rate ranging from $11.00 to $40.00 per hour.

28.    Wieland's Processing and Packaging jobs are full-time positions, and they typically are required to work 40 or more hours in a workweek.

29.    Throughout Plaintiff's employment with Wieland, Plaintiff routinely worked more than 40 hours in a workweek with an average of at least 50 hours per week with mandatory overtime. Shifts could range from 8 hours to 12 hours long if she was selected for mandatory overtime shifts.

30.    Wieland provided training to Processing and Packaging Employees on, *inter alia*, how to carry out their day-to-day job responsibilities, schedule and attendance expectations, timekeeping, and Wieland's policies. The training that all of Wieland's Processing and Packaging

Employees received was substantially, if not entirely, the same.

31.     Likewise, Plaintiff and the similarly situated Processing and Packaging Employees all shared, *inter alia*, similar job duties, job titles, compensation plans, job descriptions, and job requirements.

**A.      Wieland Required Plaintiff and Similarly Situated Employees to Wear Company-Issued Protective Clothing and Safety Equipment During Their Work Shifts**

32.     Due to the nature of its operations, Wieland required Plaintiff and the Processing and Packaging Employees to wear company-issued PPE during their work shifts in order to protect the employees from sharp metal, to protect the products from contamination, and to comply with federal and state governmental safety regulations and mandates.

33.     Wieland required Plaintiff and the Processing and Packaging Employees to don and doff the PPE before and after their scheduled work shifts in designated locations at the worksite.

34.     Wieland required Plaintiff and the Processing and Packaging Employees to use onsite lockers and changing facilities so that they could don and doff the PPE at the worksite.

35.     Wieland prohibited Plaintiff and the Processing and Packaging Employees from donning or doffing the PPE at home.

36.     Before each shift, Defendant required Plaintiff and the Processing and Packaging Employees to use coveralls, steel toe boots, gloves, safety glasses, hard hats, and ear plugs that also had to be left at the job site at a designated location at the end of the shift.

37.     Wieland prohibited Plaintiff and similarly situated employees from entering certain work areas without wearing the PPE.

38.     Wieland prohibited Plaintiff and the Processing and Packaging Employees from exiting the warehouse without first doffing their coveralls, steel toe boots, gloves, safety glasses, hard hats, and ear plugs and putting them in the designated area near the locker room.

6

39.    Plaintiff and the Processing and Packaging Employees donned and doffed the same or substantially similar PPE, regardless of their particular job title and regardless of which department they worked in, with some additional PPE being required for certain departments such as side heels and rifflets.

40.    Plaintiff and the Processing and Packaging Employees utilized the same changing facilities to don and doff the PPE, regardless of their particular job title and regardless of area they worked in.

**B.    Pre-Shift Work Activities**

41.    When arriving for their shift, Plaintiff and the Processing and Packaging Employees had to walk to Wieland's supply room to obtain the necessary PPE gear for their shift. Plaintiffs and the Processing and Packaging Employees then proceeded to Wieland's changing rooms, where it them approximately 5 minutes to walk through the building, get their PPE gear, and get to the locker room.

42.    Plaintiff and the Processing and Packaging Employees then had to travel to the changing area of the locker room. After traveling throughout the facility but before clocking in, Plaintiff and the Processing and Packaging Employees spent approximately 5-10 minutes each day opening their lockers; stowing some of their personal belongings in their lockers; donning the PPE in the changing room; and stowing their personal clothing.

43.    Plaintiffs and the Processing and Packaging Employees then had to walk to the time clock and again wait in line to clock in for each shift, a task that took an additional three to five minutes to complete due to multiple employees waiting in line and having to use a badge with a barcode to swipe in the time clock.

44.    Wieland required Plaintiff and the Processing and Packaging Employees to don the

PPE prior to punching in and before the start of their scheduled work shifts so that they could report to their assigned work areas promptly at their scheduled start times and with all the PPE on.

45.     Consequently, Plaintiff and the Processing and Packaging Employees had to initiate the PPE collection, and mandatory pre-shift donning process *before* clocking in.

46.      The above-described policies and practices resulted in Plaintiff and the Processing and Packaging Employees not being paid for their mandatory pre-shift work activities.

**C.      Post-Shift Work Activities**

47.     At the end of each shift and *after* waiting in line to clock out, Plaintiff and the Processing and Packaging Employees spent approximately 10 to 15 minutes walking to their lockers; doffing their coveralls, steel toe boots, gloves, safety glasses, hard hats and ear plugs; and finally walking to the storage room to store their PPE gear.

48.     These policies and practices resulted in Plaintiff and the Processing and Packaging Employees not being paid for their mandatory post-shift doffing activities.

49.     Since Plaintiff and the Processing and Packaging Employees regularly worked 40 or more hours per week, these policies also deprived them of overtime pay.

**D.      Wieland Calculated Overtime for its Hourly Employees from the Base Rate of Pay and Not The Regular Rate of Pay**

50.     Under the FLSA, the regular rate is the "Keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

51.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment

8

(except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

52.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  Employers carry the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Wieland's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

53.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

54.     Plaintiff's "total renumeration" included not only her base hourly pay, but also any shift differentials. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

55.     Wieland's shift differentials and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

56.     However, Wieland failed to incorporate any shift differentials into its hourly employees' regular rate calculation, resulting in *prima facie* violations of the FLSA.

57.     Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and the

Processing and Packaging Employees are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

58.      Plaintiff and the Processing and Packaging Employees regularly worked in excess of 40 hours a week, and were paid some overtime for those hours, but at a rate that did not include Wieland's shift differentials as required by the FLSA.

59.      Wieland's other paystubs for Plaintiff each show similar violations of the FLSA regular rate calculation.

60.      Wieland maintained a centralized payroll system which calculated the regular rate in the same manner for all of its Processing and Packaging Employees.

61.      As a result of these *prima facie* FLSA violations, Wieland is liable to Plaintiff and the other Processing and Packaging Employees for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

**E.**      **Wieland Breached its Agreement to Pay Plaintiff and the Processing and Packaging Employees Their Base Hourly Rates of Pay for Each Hour Worked**

62.      Prior to hiring, Wieland provided prospective Processing and Packaging Employees with a written offer setting forth the start date, title/reporting/hours (job requirements), offered base rate of pay, benefits, and conditions of employment.

63.      Wieland maintains documents demonstrating the promised base hourly wage for each Processing and Packaging Employee, including, but not limited to: offer letters, paystubs, and/or other payroll records.

64.      Plaintiff received such an offer from Wieland to work as a Processing and Packaging Employee. More specifically, on July 7, 2000, Wieland offered Plaintiff the opportunity to work as a Machine Operator at a base hourly rate of approximately $12.00 per hour.

65.      In consideration for Plaintiff's work as a Processing and Packaging Employee, Wieland promised to pay Plaintiff the aforementioned base hourly wage for each hour she worked

for Wieland.

66.      Plaintiff accepted Wieland's offer of employment in the summer of 2020 with the understanding that her base hourly rate would be paid for all hours worked. Plaintiff's acceptance created a binding and valid agreement between Plaintiff and Wieland.

67.      Plaintiff performed and fulfilled her duties under her agreement with Wieland by carrying out her job responsibilities, which included, but were not limited to, participation in retrieving PPE necessary for her scheduled shift, and engaging in the mandatory pre-shift and post-shift donning and doffing activities described herein.

68.      However, throughout Plaintiff's entire employment with Wieland, Wieland repeatedly and systematically breached its agreement with Plaintiff by not paying for her participation in the mandatory pre- and post-shift donning and doffing activities described herein.

69.      Wieland's failure to pay Plaintiff for each hour of work she performed and that was required of her as a Processing and Packaging Employee, as well as applicable overtime, was a material breach of the agreement by Wieland.

70.      As a result of Wieland's breaches, Plaintiff was deprived of wages owed to her under the agreement, including unpaid "gap time" wages.[1]

71.      Upon information and belief, all of the other Processing and Packaging Employees who worked for Wieland had similar agreements with Wieland.

72.      Upon information and belief, Wieland repeatedly and systematically breached its agreement with all the other Processing and Packaging Employees it employed in the same way that it breached its agreement with Plaintiff.

---

[1] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across the workweek.

73.    Wieland's agreement to pay Plaintiff and each Processing and Packaging Employee's applicable hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to Plaintiff and the Processing and Packaging Employees.

74.    Despite the fact that Plaintiff and the Processing and Packaging Employees performed the off-the-clock work before and after their scheduled work shifts, these off-the-clock hours were not peripheral tasks for which they were not owed additional compensation. Instead, the off-the-clock work, which was performed by Plaintiff and the Processing and Packaging Employees pursuant to Wieland's express instructions, constituted principal work activities that were integral and indispensable to their work and required to be performed at the worksite, and Wieland was obligated to pay the Processing and Packaging Employees for this time.

75.    The fact that Wieland deliberately chose not to pay Plaintiff and the Processing and Packaging Employees for this work, and the fact that the off-the-clock work was performed before and after the Processing and Packaging Employees' scheduled work shifts does not somehow relieve Wieland of its obligation to pay them for this time.

76.    Wieland was obligated to pay Plaintiff and the Processing and Packaging Employees their applicable rates of pay for *all hours worked*, including hours worked before after their scheduled work shifts.

**F.    Wieland Benefitted from Plaintiff and the Processing and Packaging Employees' Mandatory Pre- and Post-Shift Work Activities**

77.    At all relevant times, Wieland directed and directly benefited from the mandatory pre-shift and post-shift work activities performed by Plaintiff and the Processing and Packaging Employees.

78.    At all relevant times, Wieland controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and the Processing and

12

Packaging Employees.

79.    At all relevant times, Wieland was able to track the amount of time Plaintiff and the Processing and Packaging Employees spent in connection with the mandatory pre- and post-shift work activities described herein. However, Wieland failed to do so and chose not to pay Plaintiff and the Processing and Packaging Employees for their pre- and post-shift work.

80.    At all relevant times, Plaintiff and the Processing and Packaging Employees were non-exempt employees, subject to the requirements of the FLSA and applicable state laws.

81.    At all relevant times, Wieland used its attendance and adherence policies against Plaintiff and the Processing and Packaging Employees in order to pressure them into performing the mandatory pre- and post-shift work activities without pay.

82.    At all relevant times, Wieland's attendance and timekeeping policies required Plaintiff and other similarly situated employees to be ready for their shifts the moment the shift began.  In order to do that, Plaintiff and the Processing and Packaging Employees had to perform work off-the-clock and without compensation.

83.    At all relevant times, Wieland's policies and practices deprived Plaintiff and the Processing and Packaging Employees of wages owed for the mandatory pre- and post-shift work activities they performed. Because Plaintiff and the Processing and Packaging Employees regularly worked 40 hours or more per week, Wieland's policies and practices also deprived them of overtime pay.

84.    Wieland knew or should have known that the mandatory pre- and post-shift work activities performed by Plaintiff and the Processing and Packaging Employees were compensable under the law.

85.    Despite knowing Plaintiff and the Processing and Packaging Employees performed

work before and after their scheduled work shifts, Wieland failed to make any effort to stop or disallow the off-the-clock work but instead suffered, permitted, and required it to happen.

86.     Unpaid wages related to the mandatory pre- and post-shift work activities described herein are owed to Plaintiff and the Processing and Packaging Employees at the FLSA-mandated overtime premium of 1.5 times the regular hourly rates at which they were employed because Plaintiff and the Processing and Packaging Employees regularly worked 40 hours or more per week.

## FLSA COLLECTIVE ACTION ALLEGATIONS

87.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former hourly non-exempt employees who worked for Wieland Rolled Products North America, LLC at any time during the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

88.     Wieland is liable under the FLSA for, *inter alia*, failing to properly pay Plaintiff and the FLSA Collective.

89.     Excluded from the proposed FLSA Collective are Wieland's executives, administrative, and learned professional employees, including computer professionals and outside salespersons.

90.     Consistent with Wieland's policy and pattern or practice, Plaintiff and the FLSA Collective were not paid premium overtime compensation when they worked over 40 hours in a workweek and were not paid their proper regular rate of pay.

91.     Wieland assigned and/or was aware of all the work that Plaintiff and the FLSA Collective performed.

92.    As part of its regular business practices, Wieland intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

     a.     Willfully failing to pay Plaintiff and the FLSA Collective premium overtime wages for all hours worked in excess of 40 hours per workweek;

     b.     Willfully failing to record all of the time that Plaintiff and the FLSA Collective worked for the benefit of Wieland; and

     c.     Willfully failing to pay Plaintiff and the FLSA Collective the proper overtime rate by failing to use the regular rate of pay in calculating the overtime rate.

93.    Wieland is aware or should have been aware that federal law required it to pay overtime premiums to Plaintiff and the FLSA Collective for all hours worked in excess of 40 per workweek and that the regular rate of pay should have been used, including payment for shift differentials and bonuses, in calculating the correct overtime rate of pay.

94.    Wieland's unlawful conduct has been widespread, repeated, and consistent.

95.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

96.    The employment relationships between Wieland and every proposed FLSA Collective member are the same. The key issue – the amount of unpaid pre- and post-shift time and the failure to properly calculate the regular rate for overtime purposes does not vary substantially among the proposed FLSA Collective members.

97.    Many similarly situated current and former employees have been underpaid in violation of the FLSA and would benefit from the issuance of a Court-authorized notice of this lawsuit and the opportunity to join it.

98.    Court-authorized notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

99.    Those similarly situated employees are known to Wieland, are readily identifiable, and can be located through Wieland's records.

100.    Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Wieland's personnel and payroll records.

101.    The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly authorizes such a notice, the FLSA Collective members, who were unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Wieland.

### RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

102.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former hourly non-exempt employees who worked for Wieland Rolled Products North America, LLC in Illinois during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

103.    The Rule 23 Illinois Class members are so numerous that joinder of all Rule 23

Illinois Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Wieland's computer systems and electronic payroll and personnel records.

104.    There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Illinois Class members. These common legal and factual questions include, but are not limited to:

  a.  Whether Rule 23 Illinois Class members performed unpaid pre- and post-shift work activities, and if so, whether such work activities are compensable;

  b.  Whether Rule 23 Illinois Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof; and

  c.  Whether Rule 23 Illinois Class members are owed overtime wages for improperly calculated overtime rates of pay, and if so, the appropriate amount thereof.

105.    Plaintiff's claims are typical of the Rule 23 Illinois Class members' claims because Plaintiff and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of Wieland's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

106.    Plaintiff will fully and adequately protect the Rule 23 Illinois Class members' interests and retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests contrary to, or conflicting with, the Rule 23 Illinois Class members' interests.

107.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23

Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

108.    This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Wieland has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

109.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201 *et seq.* – FAILURE TO PAY OVERTIME**

110.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

111.    At all times relevant to this action, Wieland was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

112.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Wieland within the meaning of 29 U.S.C. § 203(e)(1).

113.    Plaintiff and the FLSA Collective were non-union employees.

114.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, were all non-exempt employees.

115.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

116.    At all times relevant to this action, Wieland "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g).

117.    At all times relevant to this action, Wieland required Plaintiff and the FLSA Collective to perform mandatory pre- and post-shift work activities, as described herein, but failed to pay these employees the federally mandated overtime compensation for the pre- and post-shift work.

118.    The mandatory pre- and post-shift work activities performed every shift by Plaintiff and the FLSA Collective were an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

119.    The Fair Labor Standards Action and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Wieland's shift differentials and other remuneration do not fall into any of those exceptions.

120.    Wieland failed to include shift differentials and other renumeration into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Wieland's hourly employees were working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

121.    At all relevant times, Wieland maintained a policy and practice of willfully refusing to pay Plaintiff and all putative collective members the legally required amount of overtime

compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

122.     In workweeks where Plaintiff and other FLSA Collective members worked over 40 hours, the unpaid pre- and post-shift time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly rate of pay, including shift differential pay and all other non-excludable remuneration. *See* 29 U.S.C. §§ 207(a) & (e).

123.     Wieland's violations of the FLSA were knowing and willful. Wieland knew or could have determined how long it took Plaintiff and the FLSA Collective to perform their mandatory pre- and post-shift work. Further, Wieland could have easily accounted for and paid Plaintiff and the FLSA Collective for these work activities but deliberately chose not to.

124.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated (i.e., double) damages, plus interest, costs, reasonable attorneys' fees, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## COUNT II
## RULE 23 ILLINOIS CLASS ACTION
## VIOLATION OF ILLINOIS MINIMUM WAGE LAW ("IMWL"),
## §§ 820 ILCS 105/1, *et seq*. AND ILLINIOS WAGE PAYMENT AND COLLECTION ACT
## ("IWPCA"), §§ ILCS 115/1, *et seq*.

125.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

126.     At all times relevant to the action, Wieland was an employer covered by the mandates of the IMWL, and Plaintiff and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

127.     The IMWL, §§ 820 ILCS 105/1, *et. seq*. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of 40 per

week. *See* §§ 820 ILCS 105/4; 820 ILCS 105/4a.

128.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

129.    The IWPCA "applies to all employers and employees in [Illinois], … but excepting employees of the State or Federal governments." *See* §§ 820 ILCS 115/1. Plaintiff and the Rule 23 Illinois Class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

130.    Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

131.    Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

132.    As discussed herein, Wieland had a binding and valid contract with Plaintiff and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff and the Rule 23 Illinois Class members performed on Wieland's behalf.

133.    For example, Wieland offered to compensate Plaintiff at a minimum of $12.00 per hour, plus any overtime pay required by applicable law, if she agreed to perform services for

Wieland as an hourly employee. Plaintiff accepted Wieland's offer and performed under the contract by fulfilling her duties, which included, but were not limited to, the required pre- and post-shift work activities, in reliance on the offer.

134.    Evidence of this contract includes Wieland's letters offering employment, the Wieland Employee Handbook, pay statements, and other documentary evidence in Wieland's possession.  Additionally, Wieland made verbal offers for payment at a specified, above minimum wage for processing work, which Plaintiff accepted and performed, including the unpaid pre- and post-shift work activities described herein, but Wieland failed to perform by paying Plaintiff and the Rule 23 Illinois Class the promised wages for all work.

135.    Upon information and belief, each Rule 23 Illinois Class member, including Plaintiff, was contractually entitled to a minimum hourly rate within the applicable period, in addition to applicable overtime premiums.

136.    Plaintiff and every other Rule 23 Illinois Class member accepted the terms of Wieland's contractual promises contained in Wieland's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift and post-shift work described herein.

137.    Wieland breached its contractual promises by failing to pay Plaintiff and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

138.    Plaintiff and the Rule 23 Illinois Class also did not receive accurate wage statements that detailed each hour worked and their rate of pay because Wieland failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Illinois Class and improperly calculated Plaintiff's overtime rate by failing to use the proper regular rate.

139.    820 ILCS 115/9 prohibits "deductions by employers from wages or final compensation." Accordingly, in workweeks that Wieland unilaterally altered time records to exclude the pre- and/or post-shift activities discussed herein, Wieland violated 115/9 of the IWPCA.

140.    Additionally, 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

141.    Wieland violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint and at the proper overtime rate.

142.    As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

### COUNT III
### RULE 23 CLASS ACTION
### BREACH OF CONTRACT

143.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

144.    At all times relevant to this action, Wieland had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour

they worked at a pre-established (contractual) regular hourly rate, plus overtime pay for hours worked over 40 in a workweek, in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Wieland's behalf.

145.    For example, Wieland offered to compensate Plaintiff at a minimum of $12.00 per hour plus applicable overtime premiums, which increased as Plaintiff received raises, if she agreed to perform services for Wieland as a Machine Operator. Plaintiff accepted Wieland's offer and performed under the contract by fulfilling their duties as a Machine Operator, which included, but was not limited to, the pre-shift and post-shift work activities required of her, in reliance on the offers.

146.    Evidence of these contracts include Wieland's letters offering employment, pay statements, Wieland's Employee Handbook, and other documentary evidence in Wieland's possession. Additionally, Wieland made verbal offers for payment at a specified, above minimum wage for processing work, which Plaintiff accepted and performed, including the unpaid pre-shift and post-shift work activities described herein, but Wieland failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages for all work.

147.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate within the applicable period.

148.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Wieland's contractual promises contained in Wieland's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift and post-shift work described herein.

149.    Wieland breached its contractual promises by failing to pay Processing and

Packaging Employees at their fixed, agreed upon hourly rate for *all* of the hours worked and for failing to pay Processing and Packaging Employees at their proper agreed upon overtime rate.

150.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein and for failing to properly pay overtime at the correct rate, Wieland systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

151.    Wieland can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Wieland's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member and any shift differentials, premium pay and other renumeration that would create the regular rate that the overtime rate should be calculated through.

152.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Wieland paid them ***more*** than the federally mandated minimum wage of $7.25 per hour, but less than 40 hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

153.    Wieland also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

154.    As a direct and proximate result of Wieland's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 CLASS ACTION
## UNJUST ENRICHMENT

155.    Plaintiff re-allege and incorporate all previous paragraphs herein and further allege as follows.

156.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

157.    At all times relevant to this action, Wieland promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Wieland.

158.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Wieland's promise for the pre-established hourly rate and performed by doing their jobs and carrying out their required work duties.

159.    Wieland received a benefit from the mandatory pre- and post-shift work in that these services protected the beef products from contamination, and allowed Wieland to comply with federal and state governmental safety, health, and food regulations and mandates.  .

160.    Despite this, Wieland did not pay the Plaintiff and the Rule 23 Nationwide Class members for these services.

161.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the mandatory pre-shift and post-shift work they performed before and after each shift, Wieland was unjustly enriched. Wieland was also unjustly enriched by failing to pay all wages owed to Plaintiff and the Rule 23 Nationwide Class by improperly calculating their overtime rate by using the hourly rate instead of the proper regular rate.

162.    Plaintiff and the Rule 23 Nationwide Class members performed mandatory pre- and post-shift work activities and overtime at the request of, without objection by, and for the benefit of, Wieland.

163.    Wieland received and accepted the overtime and  pre- and post-shift work from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

164.    Upon information and belief, Wieland used the monies owed but not paid to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

165.    Wieland has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class members performed for Wieland's benefit, without having paid Plaintiff and the Rule 23 Nationwide Class members for the same.

166.    Plaintiff and the Rule 23 Nationwide Class members suffered detriment due to Wieland's failure to pay them for the mandatory pre- and post-shift work activities described herein, in that Plaintiff and the Rule 23 Nationwide Class members were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

167.    As a direct and proximate result of Wieland's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the putative FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Nationwide Class, request the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's state law claims under the IMWL and IWPCA (Count II);

c.  An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.  An Order compelling Wieland to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e.  An Order designating Plaintiff as a representative of the FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Class, and undersigned counsel as class counsel for the same;

f.  A complete accounting of all the compensation Plaintiff and the others similarly situated are owed;

g.  An Order declaring Wieland violated the FLSA;

h.  An Order declaring Wieland violations of the FLSA were willful;

i.  An Order declaring Wieland violated Illinois wage-and-hour law;

j.  An Order declaring Wieland breached its contracts with Plaintiff and the members of the Rule 23 Class (or, in the alternative, that Wieland was unjustly enriched) by failing to pay them for mandatory pre- and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

k.  An Order granting judgment in favor of Plaintiff and against Wieland and awarding Plaintiff, the FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Class the full amount of damages and liquidated damages available by law;

l.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

m.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.  An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury under Fed. R. Civ. P. 38.

Dated: December 4, 2025                    Respectfully Submitted,

*/s/David W. Garrison*
David. W. Garrison (KY Bar. No. 98258)
Joshua A. Frank
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Avenue North
Nashville, Tennessee 37203
Telephone: (615) 244-2202
dgarrison@barrettjohnston.com

Jesse L. Young *
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

Jonathan Melmed *
Meghan Higday *
Melmed Law Group, P.C.
1801 Century Park E., Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
mh@melmedlaw.com
jm@melmedlaw.com

* *Pro Hac Vice* Admission to be applied for

*Attorneys for Plaintiffs and the Putative Collective and Class Members*